**KUHL et al. v. ROBERSON, et ux.    (No. 3316.)**

(Court of Civil Appeals of Texas. Texarkana. Dec. 23, 1926. Rehearing Denied Jan. 6, 1927.)

1. **Vendor and purchaser ⊚⇒46—In determining character of land contract, purpose of parties as evidenced by agreement and its provisions will be looked to.**

In determining character of transaction for sale of land in purchasers' action for refund of money paid to realtors on their failure to procure a loan as agreed to take up last installment due on the land, purpose of parties as evidenced by agreement and its provisions will be looked to.

2. **Vendor and purchaser ⊚⇒84 — Purchasers held entitled to rescission under contract, where vendors failed to obtain loan to take up part of purchase price as agreed.**

Purchasers *held* entitled, under agreement, to rescission of contract of sale, when, after paying down payment and 12 installments Land Bank refused loan on property to take up part of purchase price, where parties intended that "all money paid may be refunded," if such loan was not obtained.

3. **Contracts ⊚⇒250—Agreement to cancel or rescind contract at future time, if certain things are not done, is valid.**

Agreement to cancel or rescind contract at future day, if certain things are not done, is within legal rights of parties, and will be enforced.

4. **Vendor and purchaser ⊚⇒84—Cancellation of land contract in toto held not inequitable, where vendors failed to comply with agreement.**

Cancellation of contract for sale of land in toto *held* not inequitable, where purchasers, after paying down payment and 12 installments, elected to rescind contract as a whole for failure of vendors to secure loan as agreed to take up last installment of purchase price.

Appeal from District Court, Bowie County; R. J. Williams, Judge.

Action by W. O. Roberson and wife against B. H. Kuhl and another. Judgment for plaintiffs, and defendants appeal. Affirmed.

W. O. Roberson and wife seek to recover of appellants Kuhl and Wade, realtors, the sum of $1,420 paid to them upon a contract for the sale and purchase of a certain farm of 40 acres of land. The suit is founded, in effect, upon an alleged written contract expressly stipulating that the defendant shall refund to the plaintiffs the said sum of money in case of failure, which was averred happened, to comply with certain obligations upon the defendants by the terms of the agreement. The defense is, in effect, founded upon the claim that the defendants in good faith aided the plaintiffs in the attempt to secure a loan to take up a part of the last installment due and payable on the sale price of the land, and that the failure of the effort was in nowise due to any fault on the part of the defendants, and that there was no real default on the part of the defendants in the terms of the agreement.

The contract in controversy reads:

"State of Arkansas, County of Miller. This memorandum of an agreement made and entered into in duplicate this the 15th day of January, 1924, by and between B. H. Kuhl and M. C. Wade, parties of the first part, and W. O. and Nannie P. Roberson, parties of the second part, witnesseth: That the said parties of the first part have this day bargained to sell unto the said parties of the second part and unto their heirs and assigns, the following described real estate situated in the county of Miller and the state of Arkansas, to wit: (Here follows description) for the price of twenty-five hundred ($2,500.00) dollars, of which the sum of one thousand ($1,000.00) dollars is paid in cash and the remaining sum of fifteen hundred ($1,500.00) dollars to be paid in twelve equal installments of $35.00 each, the first installment being due and payable on the 15th day of February, A. D. 1924, and the remaining installments in 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, and 11 months thereafter, and one installment given for $1,080.00 due thirteen months after date according to the stipulations of installment note this day, executed by the said parties of the second part and payable to B. H. Kuhl and M. C. Wade, at Texarkana, Texas, with interest payable annually at the rate of 8 per cent. per annum from date until paid, for balance of said purchase money. And the said parties of the second part agree to pay all taxes upon said property and comply with all of the requirements of any law which may apply thereto. Now, it is hereby agreed by the parties of the first part that, when the last installment of $1,080.00 is due, they will secure a loan from the Federal Land Bank in St. Louis for as much as said bank will lend upon said property, and that they will take second lien notes for any balance that may be due at that time and will then deed said property to the parties of the second part, together with an abstract showing a good title, or all moneys paid will be refunded to the parties of the second part. Now upon payment by said parties of the second part of the said notes and interest, taxes, at the time as herein specified, the said parties of the first part obligate themselves and their heirs and executors and assigns to convey to the said parties of the second part the land hereinbefore described, by a good and sufficient deed with the usual covenants of warranty. But if the payments herein required or the consideration for this bargain sale shall not be made at the time and in the manner herein stipulated,

---

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

then upon the expiration of thirty days after the first or any subsequent default in such payments all of the notes remaining unpaid shall at once become due and payable, and, if not then paid, all the obligations resting by reason of this instrument upon the said parties of the first part shall cease and become null and void and the money heretofore paid by the parties of the second part shall remain with and be the property of the parties of the first part, and shall be considered as so much rent paid by the said parties of the second part for use of said property from date of this instrument to the date of such default in payment. And the said parties of the first part are hereby authorized to enter upon and take possession of said land, and no act of the parties of the first part, done subsequent to any forfeiture of this contract as above provided, shall be held to constitute a waiver of the same, unless indorsed thereon in writing and expressly stated to be so intended. Now the said parties of the second part hereby accept the conditions of this instrument, and agree to pay all the purchase money, taxes, and expenses, at the time and in the manner herein provided, and in the event of failure to make such payments, hereby fully agree to waive all right or claim to any interest in the said described property, and agree that all the money paid to the parties of the first part shall remain with the said parties of the first part as rent herein provided, and further agree to restore possession of the said property to the said parties of the first part on demand at any time after the expiration of thirty days from the date of such failure or default. In testimony whereof, the said parties have hereunto set their hands the day and year first above written.

"[Signed]  B. H. Kuhl, M. C. Wade, Parties of the First Part.

"[Signed]  W. O. Roberson, Nannie P. Roberson, Parties of the Second Part."

The court made findings of fact as follows:

"(1) That the plaintiffs and the defendants entered into a written contract bearing date January 15, 1924, in the nature of a contract of sale by the defendants, and of purchase by the plaintiffs, and which having been introduced in evidence is made a part hereof by reference to the same extent as though copied herein, and that at the same time the plaintiffs executed and delivered to the defendants their promissory note of the same date, and which, having been introduced in evidence, is made a part hereof by reference as though fully copied herein.

"(2) That, upon the execution of said contract and note, the plaintiff paid to the defendants the sum of $1,000, and thereafter paid the installments as they accrued according to the terms of said note until the further sum of $420 had been paid.

"(3) That, upon the execution of said contract and note, the plaintiffs moved on the land described in said contract and took possession of it under the terms thereof.

"(4) That, following the execution of said contract and note, application was made for and in the name of the plaintiffs to the Federal Land Bank of St. Louis, for a loan, and, following an inspection by a representative of said bank of the premises and the recommendation of the local board for a loan, said bank finally in February, 1925, declined to make any loan on said land.

"(5) That, following the declination of said bank to make a loan on said land, the plaintiffs, on February 16, 1925, moved off said land, giving up possession thereof entirely, and demanding a refund of all amounts that they had paid to defendants on said land.

"(6) That the defendants failed or refused to refund to the plaintiffs the amount the plaintiffs had paid to them and insisted on the plaintiffs keeping said land, and as a result this suit followed.

"(7) That no deed of conveyance has ever been executed by defendants to plaintiffs for said land. (Defendants were owners of the land.)

"Conclusions of Law.

"I conclude that under the facts stated there was a breach of said contract on the part of the defendants with the plaintiffs, consisting of the failure of the defendants to secure a loan from the Federal Land Bank of St. Louis, in favor of the plaintiffs on said land, and that, as a result of said breach of contract by the defendants with the plaintiffs, the plaintiffs are entitled to recover back from the defendants the aggregate amount paid them, with interest thereon at the rate of 6 per cent. per annum from February 16, 1925, and to recover all costs incurred in the case."

In keeping with the findings, judgment was entered for the plaintiffs.

The defendant managing the sale testified, as material to state:

"As to what I did towards helping Mr. Roberson to get a loan from the Federal Farm Land Bank at St. Louis, I carried Mr. Roberson down to the office of the Miller County Farm Loan Association and had him to fill out the usual blank for applying for a loan. He made the application and signed it and turned it over to Mr. Hinton, the secretary. Mr. Roberson and his family had moved out on the land. After the Federal Land Bank declined the loan I saw the correspondence. After the Federal Land Bank declined the loan I wrote Mr. Roberson at that time of the fact, and of the fact that we were going to try and apply for another inspection of the property. Before I could do anything in the second effort, Mr. Roberson moved off the place, and I was served with notice of this suit having been instituted against us. * * * We never executed to him a deed of conveyance. We are still willing to do what we agreed to do, and would be glad to do so. We still have title to the place, and it is in our name and possession. As to whether or not I am willing to deed him that land to-day for 30 notes totaling $1,080, extending over a period of 30 years, at 5½ per cent., I will not deed it that way, but I will deed half of it that way to him. That is what would have been the way if they (the Federal Land Bank) had granted the loan the agent had recommended. * * * We would have been glad to give Mr. Roberson any terms within reason, because we did not at all want him to abandon the farm, and would have been willing to have made it just as easy as possible on him. I was perfectly willing to complete the abstract and give him a deed to it and take vendor's lien notes running over a period of any reasonable term of years that he might ask. I heard

him testifying this morning that he came to see me about this matter. I did not talk to him about it, but I wrote to him. I never saw him."

The plaintiff W. O. Roberson testified, as material to state:

"Mr. Wade and Mr. Kuhl have never offered or tendered me a deed to the land. They have never offered or tendered to me an abstract of any kind. When Mr. Kuhl told me that the Federal Land Bank had turned down the loan I asked him what he was going to do about it, and he said he was not going to do anything about it. He did not at that time or any time afterwards ever tender or offer to deed the land to me reserving any notes, or anything of the kind. * * * I did not have the money to pay off the $1,080 note. I would have accepted a deed to the land had it been tendered, with the Federal Farm Land Bank passing it over a number of years. If they had given me the loan the deal would have been the same as it was on the start—or any other loan extending the time of payments out so as I could meet them. I was willing to accept a deed if the payments were to be made so as I could meet them, but I did not have $1,080 to pay right then."

King, Mahaffey & Wheeler, of Texarkana, for appellants.

Johnson & Waters, of New Boston, for appellees.

LEVY, J. (after stating the facts as above). [1, 2] The propositions of appellants are to the effect that (1) the appellees are not entitled under the terms of the agreement to a rescission or abrogation of the contract for the sale of the land merely because of the refusal of the mortgage loan by the Federal Land Bank, and (2) a cancellation of the contract in toto is inequitable. In order to determine the real character of the transaction, the purpose of the parties, as evidenced by the agreement and its provisions, will be looked to. According to the agreement the land was to sell "for the price of $2,500.00." As stated, "the sum of $1,000.00 is paid in cash, and the remaining sum of $1,500.00 is to be paid in 12 equal installments of $35.00 each." Eleven of the 12 installments, of $35 each, aggregating $420, were to be payable monthly, beginning February 15, 1924, one month after the date of the contract, and "the one installment given for $1,080.00" was to become "due thirteen months after date according to the stipulations of installment note this day executed by the said parties of the second part." The "one installment given for $1,080.00" was not to be actually paid, though, on the future appointed due date of "thirteen months after date," but was to be by intention of the parties, as clearly appears from the contract, at that time otherwise arranged with extended time of payment. In the light of the facts it was known at the time of the agreement that the buyers were unable to pay that sum of money except through the method of monthly or annual installments extending over a considerable period of time. The clause specially agreed upon respecting the $1,080 installment reads as follows:

"Now, it is hereby agreed by the parties of the first part that, when the last installment of $1,080.00 is due, they will secure a loan from the Federal Land Bank of St. Louis for as much as said bank will lend upon said property, and that they (the appellants) will take second lien notes for any balance that may be due at the time, and will deed said property to the parties of the second part, together with an abstract showing a good title, or all moneys paid will be refunded to the parties of the second part."

[3] Such special stipulation clearly shows that the parties regarded as of essential importance to the covenant to pay the last installment and to a conveyance of the land the securing of "a loan from the Federal Land Bank in St. Louis," evidently in the way of a mortgage on the land, on the usual terms allowed by such institution, to accomplish extended time payments to the buyers, in some substantial amount, of the last installment of $1,080. While the exact amount of the loan expected to be procured is not precisely stated, yet there is mention of some amount within reasonable limits; the value of the land being considered. The words, "For as much as said bank will lend upon said property," indicate an amount as nearly the value of the land as would be permissible for the bank to agree to. The sellers were to "take second lien notes for any balance (meaning if any) that may be due (or not secured) at that time," and a "deed" was intended to be executed subject to the mortgage. It was not merely an agreement to procure money upon condition that the bank would lend it on the land, and upon the failure or nonperformance of which the covenant for payment of the last installment at its due date would nevertheless be enforceable. Such intention is not compatible with the terms employed upon consideration of the whole covenant. The failure to secure the contemplated loan was to end the contract, for inability of the proposed buyer to pay the last installment of $1,080 otherwise than by long time payments. The words of the stipulation, "Or all moneys paid will be refunded to the parties of the second part," clearly reflect the intention of the parties of cancellation or abrogation in toto of the contract of sale of the land in case there was nonconformance of the things specified. The refund of "all moneys paid" would accomplish no less than a complete rescission of the entire contract. Its real purpose was to end the contract for the sale of the land in case a mortgage loan was not procured from the bank. There was not to be a partial cancellation. An agreement to cancel or rescind a contract at a future day if certain things are not done is, admittedly, within the legal rights of the parties, and will be enforced by the courts. It is believed that the trial court correctly decided the

case, and the appellants' first proposition is therefore overruled.

[4] It is concluded that the second proposition cannot be sustained, because the appellees elected to rescind the contract as a whole and in all its terms, having such right under the agreement. The determination of the rights of the parties and the adjustment of matters growing out of it were settled by the contract. And since the agreement has not been in an essential feature performed by appellants, or the benefit of such performance received by the appellees, the appellees ought not to be required to perform further and are entitled, in the absence of waiver or the like, to treat the entire contract as broken. There is no pleading or proof of waiver or estoppel. The trial court, therefore, did not err in decreeing enforcement of the refund, and the second proposition is overruled.

The judgment is affirmed.